UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-23828-LENARD/Turnoff

BURGER KING CORPORATION,

    Plaintiff,

v.

DONALD M. CEPIEL,

    Defendant.
_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S SECOND RENEWED MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANT

**THIS CAUSE** is before the Court upon Plaintiff Burger King Corporation's Second Renewed Motion for Final Default Judgment Against Defendant. (ECF No. 40). This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida, for a hearing on damages and fees. (ECF No. 41). A hearing on this matter took place on March 22, 2011. (ECF No. 42, 43). Counsel for Plaintiff appeared at the hearing. Defendant failed to appear.

Upon review of the Motion, the court file, hearing from Plaintiff's counsel, and being otherwise duly advised in the premises, the Court makes the following findings.

Plaintiff filed this action against Defendant on October 22, 2010. (ECF No. 1). The Complaint seeks damages for amounts due Plaintiff from Defendant pursuant to a written franchise agreement with Plaintiff. The Complaint further seeks to enjoin Defendant's unauthorized use of Plaintiff's valuable trademarks and service marks in connection with the unlawful operation of a

CASE NO. 10-CV-23828-LENARD/Turnoff

restaurant as an authorized BURGER KING® restaurant.[1]

Defendant owned and operated one restaurant, BK #2757, as a franchised BURGER KING® restaurant located at 580 Broadway Street, Menands, New York 12204 (the "Restaurant"), in accordance with the terms and conditions of a BURGER KING® Restaurant Franchise Agreement dated November 21, 2000, entered into as of December 3, 1999 (the "Franchise Agreement"). Pursuant to the terms of the Franchise Agreement, Plaintiff, *inter alia*, licensed its registered trademarks and service marks (the "BKC Marks") and the "Burger King System" to Defendant for use at the Restaurant in return for monthly payments to Plaintiff for royalty payments, advertising contributions and other fees. Specifically, Defendant was obligated by the Franchise Agreement to Plaintiff pay 3.5% of royalties of gross sales for the preceding calendar month in return for his use of the "Burger King System" and the BKC Marks ("Royalty Payments"). Additionally, the Franchise Agreement required Defendant to pay Plaintiff an amount equal to 4% of his monthly gross sales at the Restaurant for the preceding calendar month in return for advertising, sales promotion, and public relations expenditures made by Plaintiff on behalf of the entire Burger King System ("Advertising Contributions").

Defendant breached the Franchise Agreement by failing to pay amounts due Plaintiff as required by the Franchise Agreement. As set forth *supra*, these failures to make payments when due constitute acts of default or Events of Default under the Franchise Agreement. By letter dated January 26, 2010, Plaintiff notified Defendant that he was in default of his obligations under the

---

[1] The Court entered an Agreed Preliminary Injunction on December 20, 2010. (ECF No. 24). Defendant closed the Restaurant and is no longer operating the Restaurant as a BURGER KING® Restaurant. As a result, Plaintiff is no longer seeking permanent injunctive relief against Defendant.

CASE NO. 10-CV-23828-LENARD/Turnoff

Franchise Agreement (the "Notices of Default"), for failing to pay when due royalty and advertising charges for the Restaurant. Defendant failed to cure the defaults as set forth in the Notices of Default. As a result of Defendant's failure to cure the defaults, the Franchise Agreement terminated effective February 9, 2010.

Notwithstanding the valid termination of the Franchise Agreement, on March 3, 2010, Plaintiff entered into a Limited License Agreement (the "Limited License") with Defendant, which allowed Defendant to continue to operate the Restaurant for a limited period of time in order to attempt to sell the Restaurant. The Limited License required Defendant to continue to operate the Restaurant pursuant to the same terms and conditions of the Franchise Agreement (other than term and right of sale) while pursuing a sale of the Restaurant to another Plaintiff-approved franchisee. In the Limited License, Defendant specifically acknowledged, agreed and confirmed that the Franchise Agreement terminated effective February 9, 2010. Defendant further acknowledged that he was liable to Plaintiff for amounts due Plaintiff for unpaid royalty, advertising and investment spending due under the Franchise Agreement. Pursuant to the Limited License, Defendant also agreed to remain liable for, and to pay Plaintiff all costs, including attorney's fees, court costs, and other legal expenses incurred by Plaintiff following the execution of the Limited License as a result of Plaintiff's efforts to enforce the terms of the Franchise Agreement and the Limited License. Defendant agreed under the Limited License to provide payment for all unpaid amounts due and owing to Plaintiff and to continue to pay all royalty and advertising fees due to Plaintiff under the Franchise Agreement and the Limited License during the period Defendant was authorized to operate the Restaurant. Defendant further agreed upon the expiration of the Limited License, he would cease

CASE NO. 10-CV-23828-LENARD/Turnoff

to operate and close the Restaurant.

Plaintiff subsequently agreed via letters dated May 21, 2010, and August 21, 2010, to extend the date on which the Limited License expired if certain criteria were met. The last extension of the Limited License Agreement expired on September 30, 2010. Accordingly, as of the close of business on September 30, 2010, Defendant no longer had a license to operate the Restaurant. Plaintiff demanded full adherence to the post-termination covenants contained in the Franchise Agreement, requiring Defendant to, *inter alia*, immediately cease and desist from all use of the BKC Marks at the Restaurant.

Defendant has failed to pay Plaintiff the amounts owed under the Franchise Agreement and the Limited License. Moreover, Defendant failed to adhere to the post-termination covenants of the Franchise Agreement, which required Defendant to, *inter alia*, immediately cease and desist from all use of the BKC Marks at the Restaurant. Due to Defendant's failure to make payments and close the Restaurant by September 30, 2010, Plaintiff commenced this action on October 22, 2010, against Defendant to recover amounts owed to Plaintiff and to enjoin Defendant from using Plaintiff's trademarks and service marks.[2] On December 7, 2010, Defendant filed its Answer and Affirmative Defenses to Complaint. (ECF No. 17). Subsequently, on December 22, 2010, Defendant's counsel filed a Motion to Withdraw as Counsel for Defendant and, on that date, the Court entered an Order

---

[2]On November 10, 2010, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 9) and a Memorandum of Law in Support of its Motion for Preliminary Injunction (ECF No. 10). On December 17, 2010, the parties reached an agreement as to the injunction and submitted a proposed preliminary injunction order to the Court. (ECF No. 23). On December 21, 2010, the Court entered the "Agreed Preliminary Injunction Order." (ECF No. 24). Thereafter, Defendant ceased operating the Restaurant as a BURGER KING® restaurant.

granting same. (ECF No. 25, 26). The Court's Order required that, within thirty (30) days thereof, Defendant obtain substitute counsel or file an affidavit stating his intention to proceed *pro se*. (ECF No. 26). Defendant failed to comply with the Order. As a result, on February 6, 2011, the Court entered an Order striking Defendant's Answer and Affirmative Defenses and directing the Clerk to enter a default against Defendant.

On February 7, 2011, the Clerk of Court entered a default against Defendant for his "failure to appear, answer or otherwise plead." (ECF No. 32). By his default, as well as the Court's striking of his Answer and Affirmative Defenses, Defendant admits the well-pleaded allegations of the Complaint and is barred from contesting the facts thus established. See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Because Plaintiff has shown a sufficient basis in its Complaint and its Second Renewed Motion for Final Default Judgment and the evidence in support thereof for the judgment requested herein, default judgment is therefore appropriate. Id. (citing Thomson v. Wooster, 114 U.S. 104, 113, 5 S. Ct. 788 (1885)).

On February 24, 2011, Plaintiff filed the instant Motion seeking the entry of a final default judgment against Defendant. (ECF No. 40). In support of the Motion, Plaintiff submitted the Declaration and Supplemental Declaration of Frank W. Taylor as to Plaintiff's damages and the Declarations of Michael D. Joblove and Nina Greene, respectively, as to Plaintiff's attorney's fees and costs. Plaintiff also filed a Declaration which attests that Defendant is not a member of the United States Military and is neither an infant nor an incompetent person.

The Supplemental Declaration of Frank W. Taylor attests that Defendant failed to pay Plaintiff a total of $54,756.88 for amounts owed under the Franchise Agreement and the Limited

CASE NO. 10-CV-23828-LENARD/Turnoff

License through September 30, 2010, as well as damages for Defendant's unauthorized use of the BKC Marks during the months of October 2010 through December 31, 2010. The Court finds that Plaintiff is entitled to these damages which arise from Defendant's failure to pay the amounts owed under the Franchise Agreement and the Limited License, as well as those damages caused by Defendant to Plaintiff during the holdover period set forth above. See Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986) (finding that royalties normally received for use of the marks are the proper measure of damages for misuse of the marks where former held over for a six-month period); see also, Holiday Inns v. Airport Holiday Corp., 493 F. Supp. 1025, 1028 (N.D. Tex. 1980) (same) (citing Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg., 597 F.2d 71 (5th Cir. 1979).

Plaintiff is also requesting attorney's fees of $30,638.00 and costs in the amount of $525.00 for a total sum of $31,163.00. As noted *supra*, Plaintiff has submitted the Declarations of Michael D. Joblove and Nina Greene in support of same. The Court has reviewed these Declarations and finds that the amounts requested are reasonable.

Accordingly, consistent with the foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiff's Second Renewed Motion for Final Default Judgment be **GRANTED** and that a final default judgment be entered against Defendant in the amount of $54,756.88, plus attorney's fees and costs in the amount of $31,163.00, for a total judgment amount of $85,919.88.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of being

CASE NO. 10-CV-23828-LENARD/Turnoff

served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. Loconte v. Dugger, 847 F. 2d 745 (11th Cir. 1998); RTC v. Hallmark Builders, Inc. 996 F. 2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 18 day of July 2011.

WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Joan A. Lenard
    All counsel of record